## No. 7484.

### N. O. AND CARROLLTON R. R. CO. vs. BOARD OF ASSESSORS.

The taxable value of that portion of the capital of a corporation represented by the shares of its stock is the market value of those shares.

The assessment of "the capital" of a corporation need not particularize every element of value entering therein. It need only be made in general terms.

APPEAL from the Third District Court, parish of Orleans. *Monroe, J.*

*L. E. Simonds* for plaintiff and appellant.

*Sam. P. Blanc* for defendant and appellee.

L. E. Simonds, for plaintiff and appellant, contended :

First—That the term "capital" is not used in any law of Louisiana in any other sense than "money." It is not applied to any other property or right. That it does not include the shares of stock of a corporation. Rev. Stats. art. 733, sec. 10 of Act No. 96 of 1877 ; Act No. 8 of 1878 (ex. sess).

Second—That the mode of assessment is unfair and unequal as applied. It was never intended by the Legislature to apply to railroads.

Third—That it is an entire mistake, that the revenue laws of this State authorize the assessment of the "capital" of any corporation at the market value of the stock as a fixed criterion.

And even if so, such rule was not intended to apply to railroads. See Act No. 96 of 1877; Act No. 8 of 1878; and Act No. 9 of 1878.

Fourth—That the Act No. 59 of 1867 was not intended to fix the value of the property, or to require that the stock to be issued should be of an amount equal to the value of the property.

And if the property was of that value then, it has greatly depreciated by the general shrinkage of values.

Fifth—That the franchises, rights, and privileges do not form part of the "capital invested or employed," and they are of no great value.

Sixth—That even if the franchises and privileges have been taxed by the Legislature, and if they are of the value assumed, they have not been assessed, or not by any proper description.

Sam. P. Blanc, for defendant and appellee, contended :

That the stock of a corporation was a part of its capital, and that it may legally be assessed at its market value. He cited 31 A. 475.

———

The opinion of the court was delivered by

SPENCER, J. The capital of the plaintiff company is $800,000, being 8000 shares of $100 each.

This amount of capital was fixed by an act of fusion between said company and certain parties holding a lease of its road, under the authority of an act of the Legislature of 1867, which authorized said road " to issue such additional stock as may represent *the value of the improvements placed on said railroad* by said lessees, and scale the stock of the present stockholders in accordance with its real value," etc., " provided the total amount of stock shall not exceed $1,000,000," etc.

Of the $800,000 capital thus fixed, stock to amount of $400,000 was given to the lessees, and $400,000 to the original stockholders of the company.

It is abundantly shown that at the time of the assessment complained of in this suit the stock was considerably above par.

The assessors have valued the real estate, cars, mules, horses, and road-bed at $244,750, and, after deducting these items from the capital of $800,000, have assessed it with the remainder, $555,250, as value of " capital." The present suit is brought to have that item of $555,250 stricken from the roll.

It is manifest that the property, rights, and privileges of the company at the time of the fusion were estimated as worth $800,000. The legislative act contemplated that stock should only issue to the extent of the *combined values* of the improvements made by the lessees and of

the "*real value*" of the stock of the then stockholders. It is equally manifest that that estimate of values did not exceed the true value of the capital of that company; for its shares have, for a series of years, been largely above par. The certificates or shares of stock are the evidences of ownership of the stockholders in the property, rights, and privileges of a corporation—in other words, of its capital—whether consisting of money, property, rights, privileges, or credits, or all of these, and we know of no fairer way of valuing this capital than by taking the aggregate value, in open market, of its shares. The revenue laws of this State expressly authorize that mode of ascertaining the value. See sec. 3, Act No. 8 of 1878.

We are unable to distinguish this case from that of the " St. Charles-Street Railroad vs. the Board of Assessors," lately decided, and not yet reported.

We are at a loss to understand how it can be affirmed that the capital, i. e. the property, rights, and privileges of this corporation is worth less than $800,000, when its shares, i. e. the evidences of the ownership of that capital, were worth, in open market, on the day of the assessment, far more than that sum. It is said in argument that the value of these shares is largely due to good management and adminis-tration of the corporation. Admitted. But does not the value of all property fluctuate, according to its productiveness? Is not a well-man-aged and carefully administered cotton or sugar plantation valued more than one that is unproductive and gone to waste? It is said that the profits of this corporation may not be so great hereafter, and that then its shares will depreciate! True, and then the value of its capital, if fixed by the value of its shares, will be proportionably diminished, and its assessment reduced.

In conclusion, we will add that the assessment of "the capital" of a corporation can not, in the nature of things, particularize each and every article and element of value entering therein. It must of neces-sity be assessed, to great extent, in general terms, and, so far as we can perceive, no distinction exists in law between corporations whose capi-tal is all in money and those whose capital consists of property, privi-leges, and franchises. We think the plaintiff's counsel underrates the value of plaintiff's privileges as a corporation. He denies that it has any franchises. It certainly has an exclusive right to the use of its tracks laid through the public streets of New Orleans. A similar right has lately been bought by the City Railroad at the sum of $630,000.

For these reasons, and those adduced in the case of the St. Charles-Street Railroad case, it is ordered and decreed that the judgment appealed from be affirmed with costs.

Rehearing refused.